# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICARDO CRUZ and PEARL LUFRANO,** | ) | |
| | ) | FILED: APRIL 11, 2008 |
| **Plaintiffs,** | ) | No.   08CV2087        EDA |
| | ) | JUDGE DOW |
| **v.** | ) | **Judge:** MAGISTRATE JUDGE MASON |
| | ) | **Magistrate:** |
| **CITY OF CHICAGO, a municipal corporation, and Chicago Police Officer JOHN HALEAS, Star 6719,** | ) ) ) | **Jury Demand** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

NOW COME the plaintiffs Ricardo Cruz ("Plaintiff") and Pearl Lufrano ("Plaintiff's Wife"), by and through their attorneys, Loftus and Saltzberg, P.C., Steven H. Fine and Breen, Pugh & Associates, complaining of defendants Chicago Police Officer John Haleas ("Officer Haleas"), and the City of Chicago, a municipal corporation (the "City"), as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to the First, Fourth and Fourteenth Amendments to the Constitution of the United States, Title 42, U.S.C. §§1983 and 2000e. Supplemental jurisdiction arises pursuant to 28 U.S.C. §§1331 and 1343(a).

2.      Venue is proper, pursuant to 28 U.S.C. 1391 in as much as the defendants reside or are located in the Northern District of Illinois and the plaintiffs reside in the Northern District of Illinois, and all of the acts and damages complained of herein occurred in the Northern District of Illinois.

## PARTIES

3.     Plaintiff Ricardo Cruz is a citizen of the United States and a resident of the State of Illinois.

4.     Plaintiff's Wife, Pearl Lufrano, is a citizen of the United States and a resident of the State of Illinois.

5.     Officer Haleas was, at all relevant times, employed by the City of Chicago as a sworn police officer.  Officer Haleas is sued in his individual capacity.

6.     Defendant City of Chicago is a municipal corporation of the State of Illinois and is and was, at all relevant times, the employer of Officer Haleas.  The City of Chicago maintains, manages and/or operates the Chicago Police Department.

## FACTS

7.     On February 15, 2004, Plaintiff was sitting on a porch with a large group of friends and family.  Officer Haleas observed the large crowd and ordered the group to leave the porch. After Plaintiff refused to leave the area, Officer Haleas placed him under arrest for the offense of driving while under the influence of alcohol.  At the time of Plaintiff's arrest, he was not even inside a motor vehicle.

8.     On February 19, 2005, Plaintiff's common law wife, Ms. Lufrano, was driving in the area of 5420 W. Grand Ave., Chicago, Illinois.  Plaintiff was seated between his children in the back seat of the vehicle.  The vehicle's owner was seated in the front passenger seat.

9.     While Plaintiff's Wife drove the vehicle down Grand Avenue, Chicago Police Officer Haleas, acting under color of law, initiated a traffic stop of the car.  Upon

2

approaching the vehicle, Officer Haleas acknowledged that he remembered Plaintiff from arresting him one year earlier.

10.     Officer Haleas ordered Plaintiff out of the back seat of the vehicle.  When Plaintiff hesitated, Officer Haleas removed his gun and banged it threateningly on the back passenger window in the face of Plaintiff's 16 year old daughter.

11.     Then, Officer Haleas physically pulled Plaintiff out of the vehicle's back seat, over Plaintiff's daughter's lap.

12.     Officer Haleas placed Plaintiff under arrest for allegedly driving under the influence of alcohol.

13.     Officer Haleas also placed Plaintiff's Wife under arrest for child endangerment for allegedly allowing Plaintiff to operate a motor vehicle while their children were in the car.

14.     At the time that Officer Haleas initiated the traffic stop of Plaintiff's Wife, Officer Haleas had a detainee in his squad car.  Upon seeing the opportunity to arrest Plaintiff, Officer Haleas released the detainee.

15.     Plaintiff, Ms. Lufrano and their children were transported to the police station.  The children were forced to watch while their parents were wrongfully arrested and then they were required to wait an hour, in the dark, on the road outside of the police station, for a relative to take custody of them.  Officer Haleas' former detainee waited with the Cruz children as the Chicago Police took no action to protect the minor children.

16.     Plaintiff's Wife spent the night in prison.

17.     Officer Haleas' official report falsely stated that when he initiated the stop, Plaintiff, not Ms. Lufrano, was driving the vehicle.

18.     Officer Haleas sworn report also falsely alleged that Plaintiff attempted to conceal a beer can during the traffic stop.  There was no liquor in the car and Officer Haleas impounded no liquor.

19.     Sometime later, after Ms. Lufrano demanded a trial by jury, the State dismissed her criminal case.

20.     Plaintiff, however, was charged with driving under the influence of alcohol and remained incarcerated for a day until his family was able to post the required bond.

21.     Prior to Plaintiff's trial, Officer Haleas gave sworn grand jury testimony containing the same false reports.  Based on Officer Haleas' perjured testimony, Plaintiff was indicted for driving under the influence of alcohol.

22.     Plaintiff entered a plea of not guilty to the charged offenses. Plaintiff's criminal case was tried before Judge Sullivan on October 6, 2006.  The State's Attorney called Officer Haleas as a witness during its case in chief.  During the trial, Officer Haleas, once again, falsely testified that Plaintiff was driving the vehicle under the influence of alcohol.

23.     Plaintiff presented testimony from several occurrence witnesses, including the vehicle's owner, who all consistently testified that Plaintiff was not driving the vehicle at the time Officer Haleas initiated the traffic stop. Plaintiff presented an actual innocence defense at trial.

24.     Judge Sullivan found Plaintiff guilty and revoked his bond.

25.     On November 3, 2006, Plaintiff was sentenced to four years in the Illinois Department of Corrections.  Plaintiff began his incarceration at Statesville Penitentiary,

on 24-hour lockdown.  He was then moved to Dixon Correctional Penitentiary, many miles from his wife and children.  Prior to his incarceration, Plaintiff had been the sole support of his family.  While Plaintiff was in prison and unable to provide for his family, his family lacked sufficient resources to pay rent and everyday expenses.  Plaintiff's Wife and children were forced to move three times to cheaper and cheaper rental apartments.

*When Officer Haleas offered perjured testimony against Plaintiff, the Chicago Police Department knew that Officer Haleas was a perjurer:*

26.     On information and belief, on or about May 17, 2005, two (unknown) Cook County State's Attorneys from the Traffic Division, reported to the City of Chicago Police Department's Internal Affairs Division that they personally observed Officer Haleas engage in filing false police reports regarding DUI arrests.  On information and belief, many other victims of Officer Haleas claimed that he gave false testimony and filed false reports in DUI cases.  Despite the information, including the eye witness reports of the State's Attorneys, the Chicago Police Department took no action against Officer Haleas for more than two years.

27.     In fact, the Chicago Police Department allowed Officer Haleas to falsely testify against Plaintiff during grand jury testimony and again during Plaintiff's October 6, 2006 criminal trial, despite the pending Internal Affairs investigation.

28.     In the fall, 2007, media reports began to appear regarding Officer Haleas perjuring himself on numerous DUI cases.

29.     On or about October 24, 2007, the media reported that the Cook County State's Attorney's Office had dismissed more than 50 DUI arrests involving Officer

Haleas. A spokesman for the State's Attorney's Office reported to the media that its Office was also investigating Officer Haleas' involvement in other DUI cases.

30. On December 1, 2007, Plaintiff filed a *pro se* petition for post trial relief. Plaintiff set out the following issues regarding his petition for relief:

1. Officer John Haleas filled out a false police report against Ricardo Cruz, stating Ricardo Cruz was driving a motor vehicle while his driver's license [was] revoked.

2. Office John Haleas lied about Ricardo Cruz being the driver of the car…

3. Officer John Haleas fabricated the whole report to get a conviction with total disregard to the damages. He caused Ricardo Cruz:

   a. To lose his job at the Red Bull plant where he was a supervisor of his department and shift.

   b. To lose his apartment and most of the contents therein.

   c. To lose the consort with his children and not being able to take care of their financial needs.

   d. Most of all, the loss of freedom and being wrongly convicted by false police reports filed by John Haleas.

(Attached, as Exhibit A, is a copy of Plaintiff's petition for post trial relief)

31. On December 20, 2007, Judge Sullivan considered Plaintiff's post trial motion for relief. Judge Sullivan stated:

I have considered the petition. I have considered the testimony at trial. I am going to grant the defendant's petition for relief of judgment, and I will enter an order that he be released *instanter*.

(Attached, as Exhibit B, is a copy of the relevant transcript portions from the hearing on Plaintiff's petition for post trial relief.)

32.     Of note is that the only allegation Plaintiff raised in his petition for post judgment relief was the credibility of Officer Haleas and the false police reports and false testimony Officer Haleas had provided against Plaintiff.

33.     The Cook County State's Attorney's Office had no objection to Plaintiff's motion for post trial relief.

34.     The only change in circumstances between the date of Plaintiff's conviction and the date that the Court granted Plaintiff's petition was the disclosure that Officer Haleas had a history of providing perjured testimony in many DUI cases.

35.     In fact, the prosecuting attorney informed the Court:

> Judge, as I have stated, I have read the transcripts of the trial in this case, and it is the People's position that we would not be able to prove the defendant guilty beyond a reasonable doubt in this case any more, and therefore it would be motion State *nolle pros.* (See exhibit B).

36.     At the time that the Cook County State's Attorney dismissed the case, the only change in circumstances between the date of Plaintiff's conviction and the State's Attorney's decision to dismiss the case was the disclosure that Officer Haleas was under investigation for filing false police reports and offering perjured testimony. There was no evidence that Officer Haleas was unable to testify, that a witness could not be located for trial or that physical evidence was destroyed or missing.  Officer Haleas' credibility was the only factor before the Court and the State's Attorney chose not to proceed.

37.     Judge Sullivan signed an order dismissing all charges against Plaintiff and ordered his immediate release from the Illinois Department of Corrections. Unfortunately, Plaintiff remained in custody for an additional four days after the order was signed, bringing his total period of incarceration on false charges to 14 months.

38.     Although the City of Chicago has long been aware of its supervision, training and discipline of police officers is entirely inadequate, it has not enacted substantial measures to address these failures; City of Chicago and the Police Department have failed to reform the broken system in any meaningful way.

39.     The City has failed to institute an "early warning" system to identify and track patterns of abuse by individual officers or groups of officers.

40.     As a result of the City's policies, practices and customs, its officers are emboldened to commit misconduct against civilians by virtue of their knowledge that they are effectively "above the law" and will not be held accountable for their misconduct.

41.     As a direct and proximate result of Officer Haleas' acts, Plaintiff and Plaintiff's Wife have suffered and continue to suffer damages including Plaintiff's loss of liberty and freedom, Plaintiffs' emotional distress, physical pain and suffering, mental anguish and humiliation, and other damages.


**COUNT I- 42 U.S.C. §1983**

**UNLAWFUL SEIZURE/DUE PROCESS**
**MONELL CLAIM**
(Plaintiff, Officer Haleas and the City of Chicago)

42.     Plaintiff realleges and incorporates all previous paragraphs as if fully stated herein.

43.     As described above, Officer Haleas, acting under color of law, and within the scope of his employment, conducted an unconstitutional seizure of Plaintiff by initially stopping Plaintiff without a lawful basis, without justification and without

probable cause, thus violating Plaintiff's rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. §1983.

44.     More specifically, on February 19, 2005, Officer Haleas stopped, searched and arrested Plaintiff without probable cause, a warrant for his arrest, reasonable suspicion, or any true belief or indicia that he had committed any crime, and transported him to the station.

45.     The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to Plaintiff's rights and innocence.

46.     The misconduct was caused and participated in by Officer Haleas' supervisors in that they failed to adequately train and supervise Officer Haleas.

47.     Officer Haleas' conduct was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will rarely be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiffs;

c.   Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by Plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.   City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging, or at least condoning  (in either event, adopting) the misconduct of its officers;

e.   During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and searching civilians without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) denial of substantive due process, abuse of legal process, malicious prosecution and filing of false charges against innocent persons; 3) preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures; 4) false denial that an incident of police officer misconduct took place; 5) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 6) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 7) failure to adequately train and

supervise police officers; 8) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 9) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 10) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a miniscule percentage of cases, thereby encouraging more police misconduct; 11) failure to deter police officers from the type of misconduct alleged in this Complaint, by its lack of discipline for police misconduct and defective internal investigations; 12) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 13) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 14) a custom of failing to properly supervise officers engaged in wrongful conduct; 15) failure to adequately train and supervise police officers to rectify the malfeasance described, above;

f.   In 2003, a federal jury in the case of *Garcia v City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at 2* (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers' and as a result, fostered a culture of impunity within the Chicago Police Department.

g. By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations, less than 1 percent. A far smaller percentage of officers were actually disciplined for their misconduct. The Department's annual reports from 2001, 2002 and 2003 reveal similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints;

h. Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

i. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

j. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here.

48. The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

49. As a direct and proximate result of the City of Chicago and Officer Haleas intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career

and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against the City of Chicago and Officer Haleas, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Haleas, and any other relief this Court deems appropriate.

## COUNT II- 42 U.S.C. §1983

### FALSE IMPRISONMENT PRIOR TO TRIAL
### MONELL CLAIM
(Plaintiff, Officer Haleas and the City of Chicago)

50.     Plaintiff realleges and incorporates all previous paragraphs.

51.     As described above, Officer Haleas, acting under color of law, falsely imprisoned Plaintiff without lawful justification, during the initial stop of Plaintiff, while transporting Plaintiff to the district station, and then again when placing Plaintiff in detention at the station.

52.     Plaintiff was physically restrained without lawful justification by Officer Haleas, in violation of the prohibition of false imprisonment.

53.     The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to Plaintiff's rights and innocence.

54.     The misconduct was caused and participated in by Officer Haleas' supervisors in that they failed to adequately train and supervise Officer Haleas.

55.     Officer Haleas' conduct was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will rarely be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by Plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of its officers;

e. During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and imprisoning civilians without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) denial of substantive due process, abuse of legal process, malicious prosecution and filing of false charges against innocent persons; 3) preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures; 4) false denial that an incident of police officer misconduct took place; 5) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 6) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 7) failure to adequately train and supervise police officers; 8) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 9) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 10) conducting inherently deficient investigations of complaints of police misconduct in which an officer

receives meaningful discipline in only a miniscule percentage of cases, thereby encouraging more police misconduct; 11) failure to deter police officers from the type of misconduct alleged in this Complaint, by its lack of discipline for police misconduct and defective internal investigations; 12) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 13) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 14) a custom of failing to properly supervise officers engaged in wrongful conduct; 15) failure to adequately train and supervise police officers to rectify the malfeasance described, above;

f. In 2003, a federal jury in the case of *Garcia v City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at 2* (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers' and as a result, fostered a culture of impunity within the Chicago Police Department;

g. By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations, less than 1 percent. A far smaller percentage of officers were actually disciplined for their misconduct. The Department's annual reports from 2001, 2002 and 2003 reveal

similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints;

h. Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

i. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

j. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here.

56.     The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

57.     As a direct and proximate result of the City of Chicago and Officer Haleas intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against the City of Chicago and Officer Haleas, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Haleas, and any other relief this Court deems appropriate.

## COUNT III- 42 U.S.C. §1983

### FALSE IMPRISONMENT AFTER TRIAL
### MONELL CLAIM
(Plaintiff, Officer Haleas and the City of Chicago)

58.     Plaintiff realleges and incorporates all previous paragraphs.

59.     On October 6, 2006, Officer Haleas, acting under color of law, provided false testimony during the trial in the matter of *People of the State of Illinois vs. Ricardo Cruz*, No. 05 CR 9783.  As a direct result of the false testimony, Judge Sullivan found Plaintiff guilty of felony driving while under the influence of alcohol.  Judge Sullivan revoked Plaintiff's bond and he was placed in custody.

60.     As a direct result of Officer Haleas' false testimony, Plaintiff was incarcerated in the Illinois Department of Corrections for a period of 14 months.

61.     The misconduct was caused and participated in by Officer Haleas' supervisors in that they failed to adequately train and supervise Officer Haleas.

62.     Officer Haleas' conduct was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately

18

train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will rarely be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by Plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning  (in either event, adopting) the misconduct of its officers;

e.  During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and imprisoning civilians without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) denial of substantive due process, abuse of legal process, malicious prosecution

and filing of false charges against innocent persons; 3) preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures; 4) false denial that an incident of police officer misconduct took place; 5) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 6) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 7) failure to adequately train and supervise police officers; 8) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 9) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 10) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a miniscule percentage of cases, thereby encouraging more police misconduct; 11) failure to deter police officers from the type of misconduct alleged in this Complaint, by its lack of discipline for police misconduct and defective internal investigations; 12) a custom of failing to train police officers to not

retaliate against officers who violate the code of silence; 13) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 14) a custom of failing to properly supervise officers engaged in wrongful conduct; 15) failure to adequately train and supervise police officers to rectify the malfeasance described, above;

f.   In 2003, a federal jury in the case of *Garcia v City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at 2* (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers' and as a result, fostered a culture of impunity within the Chicago Police Department;

g.   By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations, less than 1 percent.  A far smaller percentage of officers were actually disciplined for their misconduct.   The Department's annual reports from 2001, 2002 and 2003 reveal similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints;

h.   Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

i. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

j. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here.

63. The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

64. As a direct and proximate result of the City of Chicago and Officer Haleas intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against the City of Chicago and Officer Haleas, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Haleas, and any other relief this Court deems appropriate.

## COUNT IV- 42 U.S.C. §1983

### DUE PROCESS
### MONELL CLAIM
(Plaintiff, Officer Haleas and the City of Chicago)

65.     Plaintiff realleges and incorporates all previous paragraphs.

66.     Officer Haleas' false police reports, acting under color of law, were the sole basis for Plaintiff's detention after his bond hearing.

67.     Officer Haleas' false sworn police reports, acting under color of law, denied Plaintiff his right to a fair bond hearing.

68.     Officer Haleas' false police reports, false complaints, misinformation to the State's Attorney's Office and withholding of exculpatory evidence, under color of law, also caused the State's Attorney's office to seek criminal charges from the Grand Jury against Plaintiff without a lawful basis, in violation of Plaintiff's due process rights.

69.     Officer Haleas, acting under color of law, provided false testimony during the Grand Jury testimony related to Plaintiff's criminal case.

70.     Officer Haleas' false testimony was the only basis for the Grand Jury's finding of a true bill against Plaintiff.

71.     Officer Haleas' false testimony before the Grand Jury denied Plaintiff his Constitutional right to a fair Grand Jury proceeding.

72.     Officer Haleas, acting under color of law, also falsely testified before Judge Sullivan during Plaintiff's criminal trial.

73.     Officer Haleas' conduct denied Plaintiff his constitutional right to a fair trial under the United States Constitution.

74.    The misconduct was caused and participated in by Officer Haleas' supervisors in that they failed to adequately train and supervise Officer Haleas.

75.    Officer Haleas' conduct was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will rarely be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c. Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by Plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and

24

yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of its officers;

e.  During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and imprisoning civilians without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) denial of substantive due process, abuse of legal process, malicious prosecution and filing of false charges against innocent persons; 3) preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures; 4) false denial that an incident of police officer misconduct took place; 5) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 6) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 7) failure to adequately train and supervise police officers; 8) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 9) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of

silence can be inferred; 10) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a miniscule percentage of cases, thereby encouraging more police misconduct; 11) failure to deter police officers from the type of misconduct alleged in this Complaint, by its lack of discipline for police misconduct and defective internal investigations; 12) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 13) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 14) a custom of failing to properly supervise officers engaged in wrongful conduct; 15) failure to adequately train and supervise police officers to rectify the malfeasance described, above;

f. In 2003, a federal jury in the case of *Garcia v City of Chicago*, No. 01 C 8945, 2003 WL 22175618, at 2* (N.D. Ill. Sept. 19, 2003) affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers' and as a result, fostered a culture of impunity within the Chicago Police Department;

g. By its own accounting, in 2004 the City of Chicago sustained civilians' allegations against officers in only 11 of 1,684 allegations of civil rights violations, less than 1 percent. A far smaller percentage of officers were actually disciplined for their misconduct. The

Department's annual reports from 2001, 2002 and 2003 reveal similarly high numbers of civil rights complaints against its officers and similarly low rates of sustaining those complaints;

h.  Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

i.  The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

j.  The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here.

76.     The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

77.     As a direct and proximate result of the City of Chicago and Officer Haleas intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against the City of Chicago and Officer Haleas, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officer, and any other relief this Court deems appropriate.

## COUNT IV – 42 U.S.C. §1983

**FREEDOM OF ASSOCIATION /DUE PROCESS**
*MONELL* **CLAIM**
**(Plaintiff, Plaintiff's Wife, Office Haleas and the City of Chicago)**

78. Plaintiff and Plaintiff's Wife reallege each of the foregoing paragraphs as if fully stated herein.

79. Plaintiff and Plaintiff's Wife have a constitutionally protected freedom to associate with each other and to maintain their relationship with each other free from intrusion by the Chicago Police Department.

80. As described above, Officer Haleas, acting under color of law, unreasonably restricted Plaintiff and Plaintiff's Wife's ability to see each other during the initial detention and during the 14 months of Plaintiff's wrongful incarceration, pursuant to the First and Fourteenth Amendments to the United States Constitution.

81. The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to the rights of Plaintiff and Plaintiff's Wife.

82. The misconduct was caused and participated in by Officer Haleas' supervisors in that they failed to adequately train and supervise Officer Haleas.

83. The conduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff and Plaintiff's Wife;

c. Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by Plaintiff and Plaintiff's Wife in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officer Haleas;

e.   During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

f.   Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g.   The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h.   City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

i.   The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.   The City of Chicago acquiesced in a longstanding practice or custom

of failing to discipline officers engaged in illegal conduct from which

the unconstitutional code of silence can be inferred.

84.   The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

85.   The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officer Haleas to believe that they could deprive Plaintiff and Plaintiff's Wife of their Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

86.   As a direct and proximate result of the City of Chicago and Officer Haleas intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff and Plaintiff's Wife have suffered pain, mental anguish, humiliation and severe emotional distress and have been deprived of certain rights and privileges as citizens of the United States.

**WHEREFORE**,  Plaintiff and Plaintiff's Wife pray that the Court enter judgment in their favor and against the City of Chicago and Officer Haleas, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Haleas, and any other relief this Court deems appropriate.

## COUNT V – 42 U.S.C. §1983

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff, Plaintiff's Wife and Office Haleas)

87.     Plaintiff and Plaintiff's Wife reallege and incorporate all previous paragraphs.

88.     Officer Haleas intentionally intended to cause Plaintiff and Plaintiff's wife severe emotional distress by the following intentional acts or omissions:

a.  Stopping and detaining Plaintiff and Plaintiff's Wife without cause;

b.  Stopping and detaining Plaintiff and Plaintiff's Wife, without cause, in front of their children;

c.  Unholstering his service revolver and banging it threateningly on the car glass in Plaintiffs' daughter's face;

d.  Drafting, swearing to and submitting false police reports to cause Plaintiff and Plaintiff's Wife to be detained;

e.  Drafting, swearing to and submitting false police reports to cause Plaintiff and Plaintiff's Wife to have to post bond;

f.  Drafting, swearing to and submitting false police reports to cause the State's Attorney to seek indictment of Plaintiff;

g.  Falsely testifying against Plaintiff before the Grand Jury;

h.  Drafting, swearing to and submitting false police reports to cause Plaintiff to be indicted for felony DUI;

i.  Drafting, swearing to and submitting false police reports to cause Plaintiff to have to stand trial for felony DUI;

j.   Falsely testifying against Plaintiff during his trial causing Plaintiff to be found guilty of a felony for which he was sentenced to 4 years of incarceration;

k.   Falsely testifying against Plaintiff during his trial in front of Plaintiff's Wife and causing her to suffer the anguish of watching her husband be found guilty of a crime he did not commit;

l.   Causing Plaintiff to endure the hardships of 14 months of incarceration for a crime he did not commit;

m.   Causing Plaintiff and Plaintiff's Wife to be separated for 14 months;

n.   Causing Plaintiff to be separated from his children for 14 months;

o.   Causing Plaintiff's Wife to have to endure poverty with her three children while Plaintiff, the family's sole support, was incarcerated for 14 months;

89.   Officer Haleas' conduct was extreme, outrageous and beyond all possible bounds of decency.

90.   Officer Haleas knew there was at least a high probability that his acts would cause Plaintiff and Plaintiff's Wife severe emotional distress.

91.   As a direct and proximate result of Officer Haleas' intentionally, knowingly, unlawfully, unconscionably, willfully and wantonly acting in the manner aforesaid, Plaintiff and Plaintiff's Wife have and will suffer severe emotional distress, causing them to incur actual damages.

**WHEREFORE**, Plaintiff and Plaintiff's Wife pray that this Honorable Court enter judgment against Officer Haleas for damages, punitive damages, court costs and any other relief the Court deems appropriate.

## COUNT VI – 42 U.S.C. §1983

### MALICIOUS POSECUTION
### (Plaintiff and Office Haleas)

92.     Plaintiff realleges and incorporates all previous paragraphs.

93.     Officer Haleas knowingly and maliciously caused criminal charges to be filed and prosecuted against Plaintiff.

94.     There was no probable cause for the institution of a criminal charge against Plaintiff.

95.     The criminal proceedings against Plaintiff were commenced and continued maliciously.

96.     Officer Haleas facilitated this malicious prosecution by creating false reports, which he knew to be false which resulted in felony charges being brought against Plaintiff.

97.     Officer Haleas also maliciously testified falsely against Plaintiff which resulted in a felony conviction against Plaintiff.

98.     Plaintiff received a favorable termination of the charges against him when his petition for post judgment relief was granted, without objection from the State's Attorney and when the State's Attorney's Office declined to pursue the matter.

99.     Plaintiff was injured, including emotional and physical damage, lost wages, loss of livelihood, legal fees, traumas, humiliation, loss of liberty, mental distress and anguish.

100.    As a direct and proximate result of Officer Haleas intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, Plaintiff has and will

suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and sever emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Officer Haleas, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Haleas, and any other relief this Court deems appropriate.

## COUNT VII–*RESPONDEAT SUPERIOR*
### (Plaintiff, Plaintiff's Wife and the City of Chicago)

101. Plaintiff and Plaintiff's Wife reallege each of the foregoing paragraphs as if fully stated herein.

102. In committing the acts alleged in the preceding paragraphs, Office Haleas was a member of, and agent of, the Chicago Police Department, acting at all relevant times within the scope of his employment.

103. Defendant City of Chicago is liable as principal for all torts committed by its agents.

**WHEREFORE,** Plaintiff and Plaintiff's Wife respectfully request that the Court enter judgment in their favor and against defendant City of Chicago, in an amount equal to any award against Officer Haleas, and any other relief this Court deems just and appropriate.

## COUNT VI II– INDEMNIFICATION
### (Plaintiff, Plaintiff's Wife and the City of Chicago)

104.    Plaintiff and Plaintiff's Wife reallege each of the foregoing paragraphs as if fully stated herein.

105.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

106.    Officer Haleas is an employee of the Chicago Police Department, who acted within the scope of his employment in committing the misconduct described herein.


**WHEREFORE,** Plaintiff and Plaintiff's Wife respectfully request that this Court enter judgment in their favor and against defendant City of Chicago in the amounts awarded to Plaintiff and Plaintiff's Wife against Officer Haleas, and any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff and Plaintiff's Wife hereby demand a trial by jury on all issues so triable.

Date:   April 11, 2008

Respectfully submitted,
Ricardo Cruz and Pearl Lufrano


By: /s/ Sally H. Saltzberg
One of their Attorneys

| | | |
|---|---|---|
| Sally H. Saltzberg | Steven H. Fine | Todd Pugh |
| P. Michael Loftus | 53 W. Jackson Blvd, 1515 | Pugh, Breen & Associates |
| Loftus & Saltzberg, P.C. | Chicago, IL 60604 | 53 W. Jackson, 1515 |
| 53 West Jackson, Suite 1515 | (312) 922.0855 | Chicago, IL 60604 |
| Chicago, Illinois 60604 | | 312.360.1001 |
| (312) 913.2000 | | |